# Exhibit A

## PROMISSORY NOTE

$6,000,000                                                                    *Portage*, Wisconsin
                                                                              June 21, 2011

For value received this 21st day of June 2011 ("**Effective Date**"), **Spara, LLC**, a Delaware limited liability company of 2250 Thunderstick Drive, Suite 1203, Lexington, Kentucky 40505 ("**Borrower**"), promises to pay to the order of **Boston Finance Group, LLC**, a Florida limited liability company of 4912 Creekside Drive, Clearwater, Florida 33760, together with its successors and assigns ("**Lender**"), the principal sum of Six Million Dollars ($6,000,000), together with interest on the unpaid principal balance of this Promissory Note ("**Note**"), as provided below, in lawful money of the United States of America.

1. *Payments.* Interest only shall be paid over a term of twenty four (24) months at the office of Lender provided above, or such other place as Lender may designate, in the following manner:

    a. On July 1, 2011, all interest accruing during the period commencing with the Effective Date through June 30, 2011, which is Thirty Three Thousand and Three Hundred and Thirty Three Dollars and 33/100's ($33,333.33).

    b. On August 1, 2011, and on the 1st day of each month thereafter until Maturity (as defined below), Borrower shall make monthly payments to Lender of 20% of the accrued interest in the amount of One Hundred Thousand Dollars ($100,000.00).

    c. If not sooner paid or declared due and payable by Lender, on June 21, 2013 ("**Maturity**"), the then-outstanding principal balance together with any and all unpaid accrued interest and any unpaid late charges, fees, expenses, or other sums provided for in this Note shall be due and payable in full.

2. *Interest.*

    a. Borrower shall pay interest on the outstanding balance of this Note at a fixed rate, based on a 365-day year, equal to 20% per annum ("**Interest Rate**"), payable as described above.

    b. Upon the occurrence of an Event of Default (defined below), or if any default shall extend beyond the applicable cure period (if any), the Interest Rate may be increased by Lender to the lesser of (i) three percentage points above the rate of interest on this Note specified above; or (ii) the maximum amount permitted by applicable law to be contracted for, charged, or received ("**Default Interest Rate**"), effective upon the sending of notice to Borrower.

    c. Borrower shall not be obligated to pay, and Lender shall not collect, interest at a rate in excess of the maximum permitted by law or at a rate that will subject Lender to any civil or criminal penalties ("**Maximum Rate**"). If, because of the acceleration of maturity, the payment of interest in advance, or any other reason,

Borrower is required to pay interest at a rate in excess of the Maximum Rate, the rate of interest shall immediately and automatically be reduced to the Maximum Rate, and any payment made in excess of the Maximum Rate, together with interest thereon at the rate provided for in this Note from the date of such payment, shall be immediately and automatically applied to the reduction of the unpaid principal balance of this Note as of the date on which the excess payment was made. If the amount to be applied to reduce the unpaid principal balance exceeds the unpaid principal balance, the amount of such excess shall be refunded by Lender to Borrower.

3. *Late Fee.* With respect to any payment of principal and/or interest due to Lender pursuant to any of the Loan Documents, if any such payment of principal and/or interest due to Lender is not received by Lender on or before the seventh (7th) day after its due date, then the Borrower responsible for making the payment shall pay to Lender, immediately and without notice or demand, a late fee in an amount equal to One Thousand and 00/100 Dollars ($1,000.00) per day, retroactive to the date that the payment came due. The late fee described in this paragraph is not meant to impose a penalty but instead is imposed for the purpose of defraying the costs incident to the processing and handling of the delinquent payment. The provision for such late fee shall not be construed to permit any Borrower to make any payment after its due date, to obligate Lender to accept any overdue installment, or to affect Lender's rights and remedies upon the occurrence of an Event of Default as defined in any of the Loan Documents. Further, this late fee shall be in lieu of and supersede the late fee provisions in any of the Loan Documents.

4. *Prepayments.* This Note may be prepaid in full if Borrower also pays a pre-payment premium equal to 2.5% percent of the amount of the prepayment, and provided that at the time of any pre-payment Borrower shall not then owe to Lender any interest, late charges, fees, or other expenses. Lender shall apply the remaining portion of any pre-payment (if any) to principal. No prepayment shall postpone or interrupt the monthly payments of interest, late charges, fees, or expenses, or the payment of the remaining principal balance, all of which shall continue to be due and payable at the time and in the manner set forth in this Note.

5. *Premium Due Upon Sale.* It is understood that the proceeds of the loan made to Borrower by Lender (i.e., $6 Million) shall be used by Borrower to purchase and acquire certain capital assets of Spara Logistics, LLC, a Delaware limited liability company, currently held by Fifth Third Bank. Consistent with and not in addition to the Warrant and Option Agreement executed by the parties this same date, if at anytime during the term of the loan or within 6 months of its early prepayment, substantially all (more than 50%) of the assets of Spara Logistics, LLC are sold, transferred, or assigned, or substantially all (more than 50%) of the membership interest in Spara Logistics, LLC are sold, transferred, or assigned, Borrower shall pay to Lender 10% percent of the gross proceeds from the sale. The term "sale" shall include any sale lease-back of Spara Logistics, LLC assets, any arrangement whereby ownership of the assets of Spara Logistics, LLC are effectively transferred, or any transfer of the membership interest of Spara Logistics, LLC. The parties agree that this paragraph shall be interpreted broadly so as to achieve its intended purpose.

6.  *Application of Payments.*  Lender shall have the right, in Lender's sole discretion, to apply any payments received to principal, interest, late charges, or other fees or charges due pursuant to this Note.

7.  *Other Obligations.*  Borrower and Lender have entered into other financial arrangements identified and described in that certain Master Loan and Security Agreement dated May 1, 2010 ("**MLSA**"), as amended, which Borrower and Lender incorporate in and make a part of this Note.  All of the agreements, promises, conditions, covenants, provisions, and stipulations contained in the MLSA and the loan documents covered by it ("**Loan Documents**"), which are to be kept and performed by Borrower and its affiliates, are incorporated in and made a part of this Note to the same extent and with the same force and effect as if they were fully set forth in this Note, and Borrower covenants and agrees to keep and perform them, or cause them to be kept and performed, strictly in accordance with their terms.

8.  *Representation and Warranties.*  To induce Lender to enter into this Note, Borrower represents and warrants to Lender as follows:

   a.  **Organization and Qualification.**  Borrower is duly formed, validly existing, and in good standing as a limited liability company under the laws of the state of Delaware, and is duly qualified as a limited liability company and in good standing under the laws of each jurisdiction in which the conduct of its business or the ownership of its assets requires such qualification.

   b.  **Authority and Authorization.**  Borrower has the limited liability company power and authority to execute, deliver, and perform this Note, and to perform its obligations under this Note, and all such action has been duly and validly authorized by all necessary limited liability company action on its part.  No consent of any other party (including members, managers, or officers of Borrower) and no consent, license, approval, or authorization of, or registration or declaration with, any governmental authority, bureau, or agency is required in connection with the execution, delivery, performance, validity, or enforceability of this Note.

   c.  **Execution and Binding Effect.**  This Note has been duly and validly executed and delivered by Borrower and constitutes the legal, valid, and binding obligations of Borrower, enforceable in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, or other similar laws of general application affecting the enforcement of creditors' rights.

   d.  **Litigation.**  There are no judgments, actions, suits, or proceedings pending or, to Borrower's knowledge, threatened against or affecting Borrower or its assets before any court, governmental agency, or other tribunal which, if adversely determined, reasonably could have a material adverse effect upon the Borrower or affect Borrower's ability to perform under this Note.

   e.  **Conflict with Other Instruments.**  The execution and delivery of, and performance under, this Note will not violate or contravene any provision of any existing law or regulation or decree of any court, governmental authority, bureau, or agency with

jurisdiction over Borrower, or of any contract, agreement, or undertaking to which Borrower is a party.

      f.    **No Default; Judgments, Etc.** No Event of Default or Potential Default under any Loan Document described in the MLSA has occurred or is continuing. Borrower has satisfied all judgments and Borrower is not in default under or in violation of any material existing agreement or any judgment, writ, injunction, decree, rule, or regulation of any court, arbitrator, or federal, state, municipal, or other governmental authority, commission, board bureau, agency, or instrumentality, domestic or foreign.

      g.    **Tax Liabilities.** Borrower has filed returns for and paid in full all Taxes (as defined in the Loan Documents described in the MLSA) to the extent such filings and payments were required prior to the date of this Note. All such returns are true, correct, and complete.

      h.    **Solvency.** Borrower is, and after giving effect to this Note, will be solvent.

9.    *Default.* The entire unpaid principal balance on this Note, together with accrued interest, and with all other sums due or owed by Borrower pursuant to this Note or pursuant to the Loan Documents described in the MLSA, shall at the option of Lender, and without notice to Borrower, become due and payable immediately, with interest automatically increased to the Default Interest Rate, together with reasonable attorney fees for collection, and the Lender may exercise any of its rights and remedies set forth in this Note or in the other Loan Documents described in the MLSA upon any of the following (each, an "**Event of Default**"):

      a.    Borrower shall fail to pay any sum within 10 days of the date when due pursuant to this Note;

      b.    Borrower shall in any other way be in default under this Note and such failure continues for 15 days after receipt by Borrower of written notice from Lender specifying such failure;

      c.    Any certification, warranty, or representation made or later made by Borrower should prove to be materially false, incomplete, or incorrect;

      d.    Failure to cure any default during the allotted cure period (if any) under any Loan Document described in the MLSA;

      e.    Borrower becomes unable to pay its debts as they mature, or if Borrower becomes insolvent or voluntarily suspends transaction of its business or operations;

      f.    There is entered against Borrower a judgment, levy, or lien, or if a writ or warrant of attachment, execution, garnishment, distraint, possession, or any similar process shall be issued by any court against all or a part of the property of Borrower; or

      g.    If Lender, in view of circumstances which it considers adequate, in its commercially reasonable judgment, believes that (i) the credit of Borrower has become

impaired; (ii) a material adverse change has occurred in the financial condition of Borrower; or (iii) the value of any collateral given to secure the indebtedness evidenced by this Note (whether now or in the future) has been materially impaired.

10. ***Partial Payments; Non-Waiver.*** Acceptance by Lender of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be an Event of Default. Lender shall not be deemed by any act of omission or commission, to have waived any of its rights or remedies under this Note unless such waiver is in writing and signed by Lender, and then only to the extent specifically set forth in the writing. A waiver as to one event shall not be construed as continuing or as a bar to or waiver of any right or remedy as to a subsequent event.

11. ***Remedies.*** Lender shall be entitled to exercise all rights conferred upon it in this Note and/or the Loan Documents described in the MLSA upon the occurrence of an Event of Default, which rights shall be cumulative and concurrent, and may be pursued singly, successively, or together at the sole discretion of Lender, and may be exercised as often as occasion therefor shall occur; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release of the same. Borrower and every person and entity at any time liable for the payment of the debt evidenced by this Note (including, without limitation, guarantors under any guaranty whether now in existence or created in the future) expressly authorize Lender to immediately apply to the payment of this Note any sum of money or other property belonging to Borrower or to such person or entity deposited or otherwise in the hands of Lender; provided, however, that neither this authority, nor the fact that it may not be exercised, shall alter or modify in any manner the obligation incurred in this Note.

12. ***Waivers.*** Borrower, for itself and its officers, managers, members, successors, and assigns, and every person and entity at any time liable for the indebtedness under this Note, or any part of this Note (including, without limitation, guarantors under any guaranty now given or in the future given), expressly waives presentment for payment, demand, notice of demand, protest, notice of nonpayment or dishonor, notice of maturity, notice of protest, presentment for the purpose of accelerating maturity, diligence in collection, marshalling rights, subrogation rights, all procedural errors, defects, and imperfections, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note, as well as any exemptions under the homestead exemption law or under any other exemption or insolvency laws. Borrower agrees that Lender may release, exchange, or substitute any real estate, personal property, and/or other collateral security now held, or which may hereafter be held as security for the payment of this Note, and Lender may extend the time for payment or otherwise modify the terms of payment of any part or the whole of the debt evidenced by this Note. Borrower waives all benefit that might accrue to Borrower by virtue of any present or future laws exempting any property, real or personal, or any part of the proceeds arising from any sale of any such property, from attachment, levy, or sale under execution, providing for any stay of execution, exemption from civil process, or extension of time, and agrees that such property may be sold to satisfy any judgment entered on this Note or any other Loan Document described in the MLSA, in whole or in part and in any order as may be desired by Lender.

13. ***Liability Unaffected.*** Borrower agrees its liability shall be unconditional, without regard to the liability of any other party, and shall not be affected in any manner by any

indulgence, extension of time, renewal, waiver, or modification granted or consented to by Lender, and consents to any and all extensions of time, renewals, waivers, or modifications that may be granted by Lender with respect to the payment or other provisions of this Note, and to the release of any part of any collateral, with or without substitution, and agrees that additional makers, endorsers, guarantors, or sureties may become parties to this Note without notice to Borrower or affecting its liability under this Note.

14.   *Governing Law; Jurisdiction.*  This Note is delivered and accepted in the state of Wisconsin and shall be governed and construed in accordance with its laws, except to the extent that those laws may be preempted by the laws of the United States of America, and any judgment entered on this Note should be given full faith and credit in any state in which Lender may seek to enforce such judgment. BORROWER AND LENDER CONSENT TO THE JURISDICTION OF THE STATE AND FEDERAL DISTRICT COURTS OF WISCONSIN FOR ANY PROCEEDING IN CONNECTION WITH THIS NOTE, AND WAIVE OBJECTIONS AS TO VENUE AND CONVENIENCE OF FORUM. IN ANY ACTION OR SUIT UNDER THIS NOTE, SERVICE OF PROCESS MAY BE MADE UPON LENDER OR ANY BORROWER BY MAILING A COPY OF THE PROCESS BY FIRST-CLASS MAIL TO THE RECIPIENT IN THE MANNER PROVIDED IN THE AGREEMENT. LENDER AND BORROWER WAIVE ANY AND ALL OBJECTIONS TO SUFFICIENCY OF SERVICE OF PROCESS IF DULY SERVED IN THIS MANNER.

15.   *Waiver of Jury Trial.*  BORROWER AND LENDER, AS AN INDEPENDENT COVENANT, MUTUALLY WAIVE AND AGREE TO WAIVE THE RIGHT, IF ANY, TO A JURY TRIAL IN CONNECTION WITH ANY ACTION, SUIT, OR OTHER PROCEEDING WITH RESPECT TO THIS NOTE OR WITH RESPECT TO ANY TRANSACTION RELATED TO THIS NOTE.

16.   *Severability.*  If any term or provision of this Note, or the application of this Note to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Note, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected, and each term and provision of this Note shall be valid and be enforced to the fullest extent permitted by law.

17.   *Time of Essence.*  For purposes of this Note, time shall be of the essence.

18.   *Amendment.*  This Note may not be amended except by a writing signed by Borrower and Lender.

19.   *Binding Effect.*  This Note shall be binding upon Borrower, its successors and assigns (which shall include, without limitation, all subsequent owners of any interest in Borrower) and shall inure to the benefit of Lender, its successors, and assigns.

20.   *Construction.*  The terms of this Note have been negotiated by the parties and, thus, shall not be construed against the party originally drafting this or any other document.

21.   *Headings.*  The paragraph headings are for convenience only and shall not constitute a part of this Note, nor shall they in any way affect the meaning, interpretation, or construction of the provisions of this Note.

22. **Business Purpose.** This Note is given in a commercial transaction, and Borrower represents and warrants to Lender that the proceeds of the loan evidenced by this Note shall be used solely for business purposes.

23. **Other Fees.** Borrower shall pay a loan documentation fee of 1% of the loan amount to Lender at the time of funding of the loan. Borrower agrees that this amount may be deducted by Lender from the loan proceeds. Borrower shall pay the cost of any revenue, tax, or other stamps now or later required by law at any time to be affixed to this Note or other loan documents; and if any taxes are imposed with respect to other debts owed by Borrower, or with respect to notes evidencing debts so secured, Borrower agrees to pay or to reimburse Lender upon demand the amount of such taxes; and, if Borrower fails or refuses, or is not legally permitted to do so, Lender may at its option accelerate this Note to maturity as in the case of an Event of Default by Borrower. Nothing in this paragraph shall be deemed to require Borrower to pay income taxes payable by Lender.

Borrower, by its duly authorized agent, has executed this Note on the date opposite its signature below, effective as of the Effective Date.

Dated: June 21, 2011

**BORROWER:**

**Spara LLC, a Delaware limited liability company**

_____

By: George S. Hofmeister, Sole Member of its Board of Managers

STATE OF KENTUCKY     )
                      ) ss.
COUNTY OF Fayette     )

On this 21th day of June 2011, before me, a Notary Public in and for said County, personally appeared **George S. Hofmeister**, as authorized agent of Spara, LLC, a Delaware limited liability company, on behalf of the company, to me known to be the same person described in and who executed the foregoing instrument and who acknowledged the same to be his free act and deed, and that the same is true upon his knowledge, except to those matters therein stated to be on information and belief, and that he believes the same to be true.

Kiel P. Smith, Notary Public
Fayette County, Kentucky
Acting in Fayette County, Kentucky
My commission expires: 11/09/2013