# Exhibit B

## COMMERCIAL GUARANTY

**Borrower:**

**Spara, LLC**
2250 Thunderstick Drive
Suite 1203
Lexington, Kentucky  40505

**Lender:**

**Boston Finance Group, LLC**
4912 Creekside Drive
Clearwater, Florida  33760

**Guarantor:**

**Revstone Industries LLC**
2250 Thunderstick Drive, Suite 1203
Lexington, Kentucky  40505

1.    *Definitions.*  The following capitalized words and terms shall have the following meanings when used in this Guaranty.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

a.    **"Borrower"** means Spara, LLC, a Delaware limited liability company, and its successors and assigns.

b.    **"Guarantor"** means Revstone Industries LLC, a Delaware limited liability company, and its respective successors and assigns.

c.    **"Guaranty"** means this guaranty from Guarantor to Lender.

d.    **"Indebtedness"** means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

e.    **"Lender"** means Boston Finance Group, LLC, a Florida limited liability company, its successors and assigns.

f.    **"Note"** means and includes, without limitation, that certain Promissory Note dated as of the date of this Guaranty, executed by Borrower in favor of Lender and any and all other promissory notes now or later evidencing the Indebtedness, together with all renewals, extensions, modifications, refinancings, consolidations, and substitutions of such promissory notes.

g.    **"Loan Documents"** has the same meaning as set forth in that Master Loan and Security Agreement between Borrower (amongst others) and Lender dated May 1, 2010, and all subsequent amendments thereto ("**MSLA**"), and includes the Note, Pledge Agreement, and any other document associated with the transaction described in the Note, between Borrower and Lender.

2.    *Guaranty of Payment and Performance.*  For good and valuable consideration, Guarantor absolutely and unconditionally guarantees the full and prompt payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all of Borrower's obligations under the Note and the Loan Documents.  This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness.  Guarantor will make any payments to Lender or to its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Loan Documents.  Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

3.    *Consideration.*  Guarantor acknowledges and agrees that it and its Members will receive substantial benefits as a result of Lender making the loan to Borrower and further acknowledges and agrees that those substantial benefits are adequate consideration for Guarantor giving the Guaranty to Lender.

4.    *Indebtedness.*  The Indebtedness includes all of the principal amount outstanding, accrued interest, late charges, fees, and all collection costs and legal expenses related thereto permitted by law (including, but not limited to, attorney fees and other costs of suit), arising from any and all debts, liabilities, and obligations of every nature or form now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and the Loan Documents.  "Indebtedness" includes, without limitation, loans, advances, debts, other obligations and liabilities of Borrower, any present or future judgments against Borrower, loans or transactions that renew, extend, modify, refinance, consolidate, or substitute these debts, liabilities, and obligations whether voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or enforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.  If Lender presently holds one or more guaranties, or later receives additional guaranties from Guarantor or other persons or entities, Lender's rights under all guaranties shall be cumulative.  Such other guaranties shall not (unless specifically provided below to the contrary) affect or invalidate this Guaranty.  This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties and Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties provided by Guarantor.

5.    *Continuing Guaranty.*  THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTY THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE, AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR LATER ARISING OR ACQUIRED UNDER THE NOTE AND LOAN DOCUMENTS.  ACCORDINGLY, ANY PAYMENTS

MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS.

6.      *Duration of Guaranty.*  This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied, and all of Guarantor's other obligations under this Guaranty shall have been performed in full.  If any Guarantor elects to revoke this Guaranty, such Guarantor may only do so in writing.  Such Guarantor's written notice of revocation must be mailed to Lender, by certified mail, postage prepaid, return receipt requested, to Lender's address listed above or such other place as Lender may designate in writing.   Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation.  For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined, or due.  For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: (a) incurred by Borrower prior to the revocation; (b) incurred under any renewals, extensions, substitutions, or modifications of the Indebtedness; or (c) incurred as a result of breaches by Borrower under the Note or Loan Documents occurring prior to the revocation (i.e., late payments and default interest).  Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty.  This Guaranty is binding upon Guarantor and Guarantor's respective successors and assigns so long as any of the Indebtedness remains.

7.      *Guarantor's Authorization to Lender.*  Guarantor authorizes Lender, either before or after any revocation of this Guaranty, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (a) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, or otherwise to extend additional credit to Borrower; (b) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (c) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (d) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (e) to determine how, when, and what application of payments and credits shall be made on the Indebtedness; (f) to apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (g) to sell, transfer, assign, or grant participations in all or any part of the Indebtedness; and (h) to assign or transfer this Guaranty in whole or in part.

8.      *Guarantor's Representations and Warranties.*  Guarantor represents and warrants to Lender that (a) no representations or agreements of any kind have been made to

Guarantor which would limit or qualify in any way the terms of this Guaranty; (b) this Guaranty is executed at Borrower's request and not at the request of Lender; (c) Guarantor has full power, right and authority to enter into this Guaranty; (d) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree, or order applicable to Guarantor; (e) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (f) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (g) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (h) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (i) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; (j) each party listed as Guarantor hereunder is an affiliate of Borrower and will receive a direct and material benefit from the transaction creating the Indebtedness being guaranteed under this Guaranty; and (k) Guarantor has adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

9. ***Guarantor's Financial Statements.*** Guarantor agrees to furnish Lender with the following:

a. **Financial Statements.** Upon demand, for so long as any portion of the Indebtedness remains outstanding, financial statements in form and substance reasonably acceptable to Lender, setting forth, in reasonable detail, the assets, liabilities, and net worth of Guarantor, prepared by Guarantor and reviewed by a tax professional satisfactory to Lender.

b. **Tax Returns.** As soon as available, but in no event later than 15 days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by a tax professional satisfactory to Lender.

10. ***Guarantor's Waivers.***

a. Except as prohibited by applicable law, Guarantor waives any right to require Lender (a) to continue lending money or to extend other credit to Borrower; (b) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or non-action on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of

new or additional loans or obligations; (c) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (d) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (e) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (f) to pursue any other remedy within Lender's power; or (g) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

b.    Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of: (a) any "one action" or "anti-deficiency" law or any other law that may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (b) any election of remedies by Lender that destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (c) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (d) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (e) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (f) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

c.    Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

11.    *Acknowledgement of Waivers.*  Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

12.    *Subordination of Borrower's Debts.*  Guarantor agrees that the Indebtedness, whether now existing or later created, shall be superior to any claim that Guarantor may now have or later acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor

expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or later have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor assigns to Lender all claims that it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

13. *Miscellaneous.*

    a. **Amendments.** This Guaranty, together with the Note and the Loan Documents, constitute the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

    b. **Attorney Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorney fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorney fees and legal expenses whether or not there is a lawsuit, including attorney fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

    c. **Headings.** Paragraph headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

    d. **Governing Law.** This Guaranty will be governed by the laws of the state of Wisconsin without regard to its or any other jurisdiction's conflict-of-law or choice-of-law rules or principles.

    e. **Integration.** Guarantor further agrees that Guarantor has read and fully understand the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor agrees to defend, indemnify, and hold Lender harmless from all

losses, claims, damages, and costs (including Lender's attorney fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

      f.     **Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor", respectively, shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them.

      g.     **Severability.** If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable.

      h.     **Authority.** If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

      i.     **Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered upon receipt or refusal, when actually received by fax (unless otherwise required by law), on the next business day when deposited with a nationally recognized overnight courier, or, if mailed, 3 days after the date deposited in the United States mail, as first-class, certified or registered mail, postage prepaid, directed to the addresses shown at the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective only upon personal delivery to Lender as provided in the section of this Guaranty entitled "Duration of Guaranty." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

      j.     **No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior

waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent may be granted or withheld in the sole discretion of Lender.

k.    **Successors and Assigns.**    Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties and their respective successors and assigns.

l.    **Waiver of Jury.**    LENDER AND GUARANTOR WAIVE THE RIGHT TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER LENDER OR GUARANTOR.

GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON ITS EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY." NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.

*[Signatures appear on the next page.]*

Dated:  June 17, 2011

GUARANTOR:

Revstone Industries LLC, a Delaware
limited liability company

By:  George S. Hofmeister
Its:  Authorized Agent

STATE OF KENTUCKY          )
                                            ) ss.
COUNTY OF Scott               )

On this 17th day of June 2011, before me, a Notary Public in and for said County, personally appeared
**George S. Hofmeister**, as authorized agent of Revstone Industries LLC, a Delaware limited liability company, on
behalf of the company, to me known to be the same person described in and who executed the foregoing instrument
and who acknowledged the same to be his free act and deed, and that the same is true upon his knowledge, except to
those matters therein stated to be on information and belief, and that he believes the same to be true.

Kristin S. Marsh
Notary ID: 436479                    , Notary Public
_____ County, Kentucky
Acting in _____ Fayette _____ County, Kentucky
My commission expires: February 7, 2015

SHRR 1948636v2