# Exhibit H

**Boston Finance Group LLC**
**4912 Creekside Drive**
**Clearwater, Florida 33760**

November 20, 2012

*Sent Via Email Only*

James O'Toole, Esq.
Deputy General Counsel
Spara, LLC
2250 Thunderstick Drive Suite 1203
Lexington KY 40505

Dear James:

Enclosed for your information are the following:

      1. Unanimous Written Consent of Sole Member effective November 16, 2012; and,

      2. First Amendment to Operating Agreement for Lexington Logistics LLC effective November 16, 2012.

We believe these two documents are self-explanatory.

Sincerely,

Jonathan Golden
General Counsel
Boston Finance Group LLC

## LEXINGTON LOGISTICS, LLC

### UNANIMOUS WRITTEN CONSENT OF SOLE MEMBER

**WHEREAS,** Lexington Logistics, LLC, a Delaware limited liability company (the *Company*), was previously known as Spara Logistics, LLC (a copy of the Certificate of Amendment filed with the State of Delaware Secretary of State – Division of Corporations evidencing the same is attached hereto as *EXHIBIT A*); and

**WHEREAS,** Spara, LLC, a Delaware limited liability company, is the sole member of the Company; and

**WHEREAS,** Spara, LLC, as Debtor, executed a certain Pledge Agreement for LLC Membership Interest (the *Agreement*) dated June 21, 2011 and granted certain creditor rights to Boston Finance Group, LLC, as Creditor, a copy of which is attached hereto as *EXHIBIT B*; and

**WHEREAS,** the Agreement provides, at Section 4, the following:

*4.    Voting.*  Unless and until an Event of Default (as defined in the Note) occurs, Debtor shall be entitled to vote any and all of the Pledged Collateral; provided; however, that no vote shall be cast or any action taken by Debtor which would violate or be inconsistent with any of the terms of this Agreement, the Note, or any other instrument or agreement relating to the Secured Obligations, or which would have the effect of impairing the positions or interests of Creditor, or which would authorize or effect actions prohibited under the terms of the Note, including, without limitation, any amendment of Borrower's obligations or agreements with Fifth Third Bank, any amendment to Borrower's or Spara Logistic's operating agreements. *All such rights of Debtor to vote shall cease upon the occurrence of an Event of Default, if Creditor so directs and notifies Debtor.*  (*Emphasis added.*)

- and -

**WHEREAS,** the Agreement provides, at Section 6, in pertinent part, the following:

*6.    Remedies.*  Upon the occurrence of an Event of Default, Creditor shall be entitled to exercise all of the rights, powers, and remedies (whether vested in it by this Agreement, the Note, any other agreement between parties, and/or in equity or by law, and including, without limitation, all rights and remedies of a secured party of a debtor in default under the UCC) for the protection and enforcement of its rights in respect of the Pledged Collateral, and to the fullest extent permitted by applicable law, Creditor shall be entitled, without limitation, to exercise any or all of the following rights, which Debtor agrees to be commercially reasonable:

\*        \*        \*

6.3    To vote all or any part of the Pledged Collateral and otherwise act as though it were the outright owner of the Pledged Collateral;

\*        \*        \*

6.7    To appoint managers, sub-agents, officers, and servants for any of the purposes mentioned in the foregoing provisions of this Section and to dismiss the same, all as Creditor in its absolute discretion may determine; and

6.8    Generally to take all such other action as Creditor in its absolute discretion may determine as incidental or conducive to any of the matters or powers mentioned in the foregoing provisions of this Section and which Creditor may or can do lawfully and to use the name of Debtor for the purposes aforesaid and in any proceedings arising therefrom.

\*        \*        \*

- and -

**WHEREAS**, an "Event of Default" has occurred under the terms of the Note as referenced in the Agreement, as a result of, among other things, the failure of Spara, LLC to make required payments under the Note; and

**WHEREAS**, following the "Event of Default" an action was commenced by Boston Finance Group LLC in the Circuit Court of the County of Grand Traverse Michigan (Case No. 12-28975-CK) in which a Final Judgment has been obtained by Boston Finance Group against Spara LLC (a certified copy of the Final Judgment is attached hereto as *EXHIBIT C*); and

**WHEREAS**, Boston Finance Group, LLC, desires to exercise its rights and remedies as provided for under the Agreement.

**NOW, THEREFORE, IT IS HEREBY RESOLVED**, in accordance with Section 18-302(d) of the Delaware Limited Liability Act, as follows:

1.    The voting rights of Spara, LLC, with respect to its membership interest in Lexington Logistics, LLC, are hereby suspended, and Boston Finance Group, LLC, hereby gives Spara, LLC notice of the same, and Boston Finance Group, LLC hereby exercises all of the voting rights of Sparta, LLC conferred upon Boston Finance Group, LLC pursuant to the Agreement.

2.    Pursuant to Section 6 of the Agreement (and Section 5.5 and Section 5.2 of the Company's First Amended and Restated Operating Agreement June 20, 2011) all persons

currently appointed as officers or agents of the Company are hereby removed and replaced with the following persons:

| Chairman of the Board | Leo J. Govoni |
|---|---|
| President | John Fernando |
| Vice-President | Anthony Janicki |
| Secretary and General Counsel | Jonathan Golden |
| Treasurer and Chief Financial Officer | Howard Harris |
| Assistant Secretary/Assistant General Counsel | NONE |

5.    The officers are hereby authorized to perform all acts necessary and proper to carry out the business of the Company.

6.    Photocopies or facsimiles of signatures shall be considered legally binding.

**MEMBER**

**SPARA, LLC, by Boston Finance Group, LLC**

By: Leo J. Govoni

Its:  Managing Member

Dated:  November 6, 2012

# EXHIBIT A

Copy of the Certificate of Amendment filed with the State of Delaware
Secretary of State – Division of Corporations

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 07:43 PM 06/07/2011*
*FILED 07:43 PM 06/07/2011*
*SRV 110699040 - 4994194 FILE*

## STATE *of* DELAWARE
## LIMITED LIABILITY COMPANY
## CERTIFICATE *of* FORMATION

First: The name of the limited liability company is <u>Spara Logistics, LLC</u>

Second: The address of its registered office in the State of Delaware is <u>2711</u>
<u>Centerville Rd., Ste. 400</u> in the City of <u>Wilmington</u>.
Zip code <u>19808</u>. The name of its Registered agent at such address is
<u>Corporation Service Company</u>

Third: (Use this paragraph only if the company is to have a specific effective date of
dissolution: "The latest date on which the limited liability company is to dissolve is
_____.")

Fourth: (Insert any other matters the members determine to include herein.)

In Witness Whereof, the undersigned have executed this Certificate of Formation this
<u>7th</u> day of <u>June</u>, <u>2011</u>.

By: _____
Authorized Person (s)

Name: <u>Kiel Smith</u>

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 03:17 PM 11/15/2011*
*FILED 03:13 PM 11/15/2011*
*SRV 111198966 – 4994194 FILE*

# STATE OF DELAWARE
## CERTIFICATE OF AMENDMENT

1.   Name of Limited Liability Company: Spara Logistics, LLC

2.   The Certificate of Formation of the limited liability company is hereby amended
as follows:

FIRST: The name of the Limited Liability Company is
Lexington Logistics, LLC.

IN WITNESS WHEREOF, the undersigned have executed this Certificate on
the 15th _____ day of November _____, A.D. 2011 .

By: _____
Authorized Person(s)

Name: George S. Hofmeister
Print or Type

# EXHIBIT B

Copy of Pledge Agreement

for

LLC Membership Interest

## PLEDGE AGREEMENT
### FOR
### LLC MEMBERSHIP INTEREST

This Pledge Agreement for LLC Membership Interest ("**Agreement**") is made as of June 21, 2011 ("**Effective Date**") by and among **Spara, LLC**, a Delaware limited liability company ("**Debtor**"), **Boston Finance Group, LLC**, a Florida limited liability company ("**Creditor**"), and **Spara Logistics, LLC**, a Delaware limited liability company ("**Spara Logistics**").

### -R E C I T A L S-

A.      Creditor and Debtor entered into a Promissory Note ("**Note**") dated June 21, 2011, pursuant to which Debtor received a loan from Creditor in the amount of $6 Million.

B.      Debtor is the record and beneficial owner of all (100%) of the membership interest of Spara Logistics.

C.      In order to induce Creditor to make the loan to Debtor as provided in the Note, Debtor has agreed to pledge the Pledged Collateral to Creditor pursuant to the terms and conditions set forth in this Agreement.

Therefore, for good and valuable consideration, the receipt and adequacy of which are acknowledged, the parties agree as follows:

### AGREEMENT

1.      *Security for Obligations.* This Agreement is for the benefit of Creditor to secure the prompt and complete payment and performance when due of all obligations, liabilities, indebtedness (whether for principal, interest, charges, costs, expenses, indemnities, fees, including, without limitation, reasonable attorney fees, or otherwise), costs, expenses, covenants, indemnities, and agreements of every nature whatsoever of Debtor now existing or later arising under or in connection with the Note (as amended, supplemented, extended, renewed, and/or modified) (collectively, "**Secured Obligations**"). All of the covenants contained in the loan documents between Fifth Third Bank and Debtor are incorporated in this Agreement by reference; and, Debtor and Spara Logistics expressly acknowledge and agree that Creditor shall be considered a third-party beneficiary of those covenants.

2.      *Definition of Pledged Collateral.* As used in this Agreement, the term "**Pledged Collateral**" shall mean all (100%) of the membership interest in Spara Logistics, and any additional Pledged Collateral acquired pursuant to Section 3 below.

3.      *Pledge of Pledged Collateral and Other Collateral.*

a.      **Pledge.** To secure the Secured Obligations and for the purposes set forth in Section 1 of this Agreement, Debtor pledges, collaterally assigns, transfers and conveys, and grants a security interest in and lien in favor of Creditor on, all of Debtor's right, title, and interest in, to, and under, each of the following, whether now owned and existing or later acquired or arising:

(i)     the Pledged Collateral;

(ii)    any additional Pledged Collateral acquired pursuant to this Section 3 (whether by purchase, dividend, merger, consolidation, sale of assets, split, spin-off, or any other distribution of any kind or otherwise);

(iii)   all distributions, dividends, cash, certificates, liquidation rights and interests, options, rights, warrants, instruments, or other property (whether real, personal, or mixed) from time to time received, receivable, or otherwise distributed in respect of or in exchange or substitution for any and all of the Pledged Collateral;

(iv)    the Debtor's right to vote the Pledged Collateral subject to Section 4 of this Agreement; and

(v)     all proceeds, products, replacements, and substitutions for any of the foregoing, in each case whether now owned or later acquired by Debtor.

If the Pledged Collateral is evidenced by certificates, Debtor shall deposit with Creditor the Pledged Collateral owned by Debtor on the Effective Date and the certificate representing the Pledged Collateral accompanied by "membership interest powers" or an assignment separate from certificate duly executed in blank by Debtor.  Whether or not the Pledged Collateral is evidenced by certificate, Debtor permits Creditor to file a UCC Financing Statement naming Debtor as debtor and Creditor as secured party with respect to the Pledged Collateral with the appropriate filing office, in form and substance satisfactory to Creditor in its sole and absolute discretion, and without the requirement of Debtor's signature.  Notwithstanding anything to the contrary contained in this Agreement, Creditor shall not as a result of this Agreement be responsible or liable for any obligations or liabilities of Debtor in the Debtor's capacity as a member of Spara Logistics, if any, and Creditor shall not be deemed to have assumed any such obligations or liabilities.

b.      **Subsequently Acquired Pledged Collateral.**  If at any time or from time to time after the Effective Date, Debtor shall acquire any additional Pledged Collateral, including any further equity in Borrower (whether by purchase, dividend, merger, consolidation, sale of assets, split, spin-off, or any other dividend or distribution of any kind or otherwise), Debtor shall immediately pledge and, if applicable, deposit such additional Pledged Collateral with Creditor and deliver to Creditor any certificate or instruments therefor, endorsed in blank by Debtor or accompanied by "membership powers" or an assignment separate from certificate duly executed in blank by Debtor, and shall promptly thereafter deliver to Creditor any certificate executed by Debtor describing such Pledged Collateral and the other Pledged Collateral pledged to Creditor, and certifying that the same have been duly pledged with Creditor pursuant to this Agreement.  Regardless of whether such additional Pledged Collateral is evidenced by certificates, Debtor shall permit Creditor to file a UCC Financing Statement naming Debtor as debtor and Creditor as secured party with respect to the additional Collateral with the appropriate filing office, in form and substance satisfactory to Creditor in its sole and absolute discretion, and without the requirement of Debtor's signature.

c.    **Uncertificated Pledged Collateral.** In addition to anything contained in Sections 3.a and 3.b above, if any Pledged Collateral (whether now owned or later acquired) is not certificated or becomes an uncertificated security, Debtor shall promptly notify Creditor and shall promptly take all actions required to perfect the security interest and pledge in favor of Creditor under applicable law (including, in any event, any action required or appropriate under this Agreement or the Uniform Commercial Code or equivalent provisions of any other applicable jurisdiction ("UCC")). Debtor further agrees to promptly take such actions as Creditor deems necessary or desirable to effectuate the foregoing and to permit Creditor to exercise any of its rights and remedies under this Agreement. As of the Effective Date, the Pledged Collateral is not certificated.

4.    *Voting.* Unless and until an Event of Default (as defined in the Note) occurs, Debtor shall be entitled to vote any and all of the Pledged Collateral; provided; however, that no vote shall be cast or any action taken by Debtor which would violate or be inconsistent with any of the terms of this Agreement, the Note, or any other instrument or agreement relating to the Secured Obligations, or which would have the effect of impairing the positions or interests of Creditor, or which would authorize or effect actions prohibited under the terms of the Note, including, without limitation, any amendment of Borrower's obligations or agreements with Fifth Third Bank, any amendment to Borrower's or Spara Logistic's operating agreements. All such rights of Debtor to vote shall cease upon the occurrence of an Event of Default, if Creditor so directs and notifies Debtor.

5.    *Payments and Other Distributions.* Unless and until an Event of Default (as defined in the Note) shall occur, all cash dividends or distributions payable in respect of the Pledged Collateral (to the extent such payments shall be permitted pursuant to the terms and provisions of the Note) shall be paid to Debtor; provided, however, upon an Event of Default, all cash dividends or distributions payable in respect of the Pledged Collateral shall be paid to Creditor as security for the Secured Obligations; provided, further, that all cash dividends and distributions payable at any time (whether before or after an Event of Default) in respect of the Pledged Collateral which are determined by Creditor, in its sole discretion, to represent in whole or in part an extraordinary, liquidating, or other distribution in return of capital shall be promptly paid and delivered to Creditor and retained by Creditor as part of the Pledged Collateral. Creditor shall be entitled to receive directly, and to retain as part of the Pledged Collateral:

5.1    All other or additional securities or investment property, or rights to subscribe for or purchase any of the foregoing, or property (other than cash) paid or distributed by way of dividend in respect of the Pledged Collateral;

5.2    All other or additional securities, investment property or property (including cash) paid or distributed in respect of the Pledged Collateral by way of split, spin-off, split-up, reclassification, combination of shares, or similar rearrangement; and

5.3    All other or additional securities, investment property or property which may be paid in respect of the Pledged Collateral by reason of any consolidation, merger, exchange, dividend, split, or distribution, conveyance of assets, liquidation or similar reorganization, or other disposition of Pledged Collateral (to the extent any of the foregoing actions are permitted under the Note).

If at any time Debtor shall obtain or possess any of the foregoing Pledged Collateral described in this Section, Debtor shall be deemed to hold such Pledged Collateral in trust for Creditor and Debtor shall promptly surrender and deliver such Pledged Collateral to Creditor.

6.    **Remedies.** Upon the occurrence of an Event of Default, Creditor shall be entitled to exercise all of the rights, powers, and remedies (whether vested in it by this Agreement, the Note, any other agreement between parties, and/or in equity or by law, and including, without limitation, all rights and remedies of a secured party of a debtor in default under the UCC) for the protection and enforcement of its rights in respect of the Pledged Collateral, and to the fullest extent permitted by applicable law, Creditor shall be entitled, without limitation, to exercise any or all of the following rights, which Debtor agrees to be commercially reasonable:

6.1    To receive all amounts payable in respect of the Pledged Collateral otherwise payable under Section 5 of this Agreement to Debtor;

6.2    To transfer all or any part of the Pledged Collateral into Creditor's name or the name of its nominee or nominees;

6.3    To vote all or any part of the Pledged Collateral and otherwise act as though it were the outright owner of the Pledged Collateral;

6.4    At any time or from time to time to sell, assign, and deliver, or grant options to purchase, all or any part of the Pledged Collateral in one or more portions or parcels, or any interest therein, at any public or private sale at any exchange, broker's board or at any of Creditor's officers or elsewhere, without demand of performance, advertisement or notice of intention to sell or of the time or place of sale or adjournment thereof or to redeem (all of which, except as may be required by mandatory provisions of applicable law, are hereby expressly and irrevocably waived by Debtor) for cash, on credit or for other property, for immediate or future delivery without any assumption of credit risk, and for such price or prices and on such terms as Creditor in its absolute discretion may determine. Debtor agrees that to the extent that notice of sale shall be required by law that at least 10 business days' notice to Debtor of the time (during normal business hours) and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification. Creditor shall not be obligated to make any sale of Pledged Collateral regardless of notice of sale having been given. Creditor may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and any such sale may, without further notice, be made at the time and place to which it was so adjourned. Debtor waives and releases to the fullest extent permitted by law any right or equity of redemption with respect to the Pledged Collateral, whether before or after sale hereunder, and all rights, if any of marshalling the Pledged Collateral and any other security for the Secured Obligations or otherwise. At any such sale, unless prohibited by applicable law, Creditor may bid for and purchase all or any part of the Pledged Collateral so sold free from any such right or equity of redemption. Creditor shall not be liable for failure to collect or realize upon any or all of the Pledged Collateral or for any delay in so doing nor shall Creditor be under any obligation to take any action whatsoever with regard thereto;

6.5     To settle, adjust, compromise, and arrange all accounts, controversies, questions, claims, and demands whatsoever in relation to all or any part of the Pledged Collateral;

6.6     In respect of the Pledged Collateral, to execute all such contracts, agreements, deeds, documents, and instruments, to bring, defend, and abandon all such actions, suits, and proceedings, and to take all actions in relation to all or any part of the Pledged Collateral as Creditor in its absolute discretion may determine;

6.7     To appoint managers, sub-agents, officers, and servants for any of the purposes mentioned in the foregoing provisions of this Section and to dismiss the same, all as Creditor in its absolute discretion may determine; and

6.8     Generally to take all such other action as Creditor in its absolute discretion may determine as incidental or conducive to any of the matters or powers mentioned in the foregoing provisions of this Section and which Creditor may or can do lawfully and to use the name of Debtor for the purposes aforesaid and in any proceedings arising therefrom.

Debtor recognizes that Creditor may be unable to effect a public sale of any or all the Pledged Collateral, by reason of certain prohibitions contained in the Securities Act of 1933, as amended ("**Securities Act**"), and applicable state securities laws or otherwise, and may be compelled to resort to one or more private sales thereof to a restricted group of purchasers which will be obliged to agree, among other things, to acquire such securities for their own account for investment and not with a view to the distribution or resale thereof. Debtor acknowledges and agrees that any such private sale may result in prices and other terms less favorable than if such sale were a public sale and, notwithstanding such circumstances, agrees that any such private sale shall be deemed to have been made in a commercially reasonable manner. Creditor shall be under no obligation to delay a sale of any of the Pledged Collateral for the period of time necessary to permit the issuer thereof to register such securities or other interests for public sale under the Securities Act, or under applicable state securities laws, even if such issuer would agree to do so. Debtor agrees to use its best efforts to do or cause to be done all such other acts as may be necessary to make such sale or sales of all or any portion of the Pledged Collateral pursuant to this Section valid and binding and in compliance with applicable law. Debtor further agrees that a breach of any of the covenants contained in this Section will cause irreparable injury to Creditor, that Creditor has no adequate remedy at law in respect of such breach and, as a consequence, that each covenant contained in this Section shall be specifically enforceable against Debtor.

7.     *Remedies Cumulative.* Each right, power, and remedy of Creditor provided for in this Agreement, the Note, or any other security agreement, mortgage, or guaranty, now or later existing at law or in equity or by statute shall be cumulative and concurrent and shall be in addition to every other such right, power, or remedy. The exercise or beginning of the exercise by Creditor of any one or more of the rights, powers, or remedies provided for in this Agreement, the Note, or now or later existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by Creditor of all such other rights, powers, or remedies, and

no failure or delay on the part of Creditor to exercise any such right, power, or remedy shall operate as a waiver thereof.

8.    *Application of Proceeds*.  Subject to any mandatory requirements of applicable law and the terms of the Note, all moneys collected by Creditor upon any sale or other disposition of the Pledged Collateral, together with all other moneys received by Creditor hereunder, shall be applied as follows:

8.1    To the payment of any and all reasonable costs, expenses, and fees (including, without limitation, reasonable attorney fees and disbursements) incurred by Creditor directly or indirectly in connection with such sale or other disposition, the delivery or taking possession of the Pledged Collateral or the collection of any such moneys;

8.2    Next, to the payment of the Secured Obligations in any order that Creditor shall determine; and

8.3    Any surplus then remaining shall be paid to Debtor.

9.    *Indemnification*.  Without duplication of any amounts payable under any other similar indemnity provision set forth in the Note or any other agreement between Debtor and Creditor, Debtor shall:

9.1    Pay all out-of-pocket costs and expenses of Creditor actually incurred in connection with the administration of and in connection with the preservation of rights under, and enforcement of, and any renegotiation or restructuring of this Agreement and any amendment, waiver, or consent relating to this Agreement (including, without limitation, reasonable attorney fees);

9.2    Pay and hold Creditor harmless from and against any and all present and future stamp or documentary taxes or any other excise or property taxes, charges, or similar levies which arise from any payment made hereunder or from the execution, delivery, or registration of, or otherwise with respect to this Agreement and save Creditor harmless from and against any and all liabilities with respect to or resulting from any delay or omission to pay any such taxes, charges or levies; and

9.3    Indemnify and defend Creditor, and each of its officers, managers, directors, shareholders, members, employees, representatives, and agents from and hold each of them harmless against any and all costs, losses, liabilities, obligations, suits, penalties, judgments, claims, damages, or expenses incurred by or asserted against any of them (whether or not any of them is designated a party thereto) arising out of or by reason of this Agreement or any transaction contemplated hereby (including, without limitation, any investigation, litigation, or other proceeding related to this Agreement), including, without limitation, reasonable attorney fees incurred in connection with any such investigation, litigation, or other proceeding.  Notwithstanding anything in this Agreement to the contrary, Debtor shall not be responsible to Creditor for any costs, losses, damages, liabilities, or expenses which result from Creditor's negligence or willful misconduct as finally determined in a judicial proceeding (in which Creditor had

had an opportunity to be heard). All indemnities set forth in this Agreement (and Debtor's obligations under this Section) shall survive the execution and delivery of this Agreement, the making and repayment of the Secured Obligations, and any termination of this Agreement. If and to the extent that the obligations of Debtor under this Section are unenforceable for any reason, Debtor hereby agrees to make the maximum contribution to the payment and satisfaction of such obligations which is permissible under applicable law.

10.     *Further Assurances.* Debtor agrees that, at any time and from time to time, Debtor shall join with Creditor in executing and, at Debtor's own expense, will file and return under the UCC such financing statements, amendment statements, continuation statements and other documents in such offices as Creditor may deem necessary or appropriate and wherever requires or permitted by law in order to perfect and preserve Creditor's security interest in the Pledged Collateral, and authorizes Creditor to file financing statements, continuation statements and amendments thereto relative to all or any part of the Pledged Collateral without the signature of Debtor, and agrees to do such further acts and things and to promptly execute and deliver to Creditor such additional conveyances, assignments, agreements and instruments as Creditor may require or deem advisable to carry into effect the purpose of this Agreement or to further assure and confirm unto Creditor its rights, powers and remedies hereunder.

11.     *Reasonable Care.* Creditor shall be deemed by Debtor to have exercised reasonable care in the custody and preservation of the Pledged Collateral in its possession if the Collateral is accorded treatment substantially equal to that which Creditor accords its own similar property.

12.     *No Transfer.* Debtor shall not sell, transfer, gift, convey, or otherwise dispose of, grant any option with respect to, or pledge or otherwise encumber any of the Pledged Collateral or any interest therein, except with the prior written consent of Creditor.

13.     *Operating Agreement.* The Articles or Organization and/or Operating Agreement of each of Debtor and Spara Logistics, shall at all times contain provisions permitting the transfer of the Pledged Collateral to Creditor upon the occurrence of an Event of Default as defined in the Note, and shall contain all provisions necessary to permit Creditor to be admitted as substitute member, and not merely assignee of Debtor's membership interests therein, without the consent or approval of the remaining members, if any.

14.     *Covenants of Debtor.* Debtor covenants and agrees with Creditor that on and after the Effective Date and until all of the Secured Obligations shall have been indefeasibly paid in full and this Agreement terminates in accordance with its terms:

14.1    **Collateral.**

a.      Debtor will defend Creditor's right, title and security interest in and to the Pledged Collateral against the claims and demands of all persons whomsoever;

b.      Debtor will have good and marketable title to and right to pledge any other property at any time hereafter constituting Pledged Collateral and will likewise defend the right thereto and security interest therein of Creditor; and

c.      Debtor will comply in all material respects with all requirements of law applicable to the Pledged Collateral or any part thereof;

d.      Debtor will pay promptly when due all taxes, assessments and governmental charges or levies imposed upon the Pledged Collateral or in respect of any income or profits therefrom, as well as all claims of any kind against or with respect to the Pledged Collateral.

e.      Debtor will not take or permit to be taken any action which impairs Creditor's rights in the Pledged Collateral, and will take such other action as is necessary to remove, any lien or claim on or to the Pledged Collateral, other than the liens created hereby, and will defend the right, title and interest of Creditor in and to any of the Pledged Collateral against the claims and demands of all persons whomsoever.

14.2    **Performance By Creditor of Debtor's Obligations; Reimbursement.** If Debtor fails to perform or comply with any of the provisions of this Agreement, Creditor may, without notice to or consent by Debtor, perform or comply or cause performance or compliance therewith, and the expenses of Creditor incurred in connection with such performance or compliance shall be payable by Debtor to Creditor on demand, and such reimbursement obligation shall be secured hereby; provided, however, Creditor shall not be under any obligation to take any such action.

14.3    **Further Identification of Pledged Collateral.** Debtor shall furnish to Creditor from time to time such reports and certifications in connection with the Pledged Collateral as Creditor may reasonably request from time to time.

14.4    **Continuous Perfection.** Debtor will not change Debtor's name, in any manner which might make any financing or continuation statement filed hereunder seriously misleading within the meaning of any applicable provision of Article 8 or 9 of the UCC unless Debtor shall have given Creditor at least 15 days' prior written notice thereof and shall have taken all action necessary or reasonably requested by Creditor to amend such financing statement or continuation statement so that it is not seriously misleading.

14.5    **Miscellaneous.** Debtor shall not file or authorize or authenticate or permit to be filed in any jurisdiction any financing statements under the UCC or any like statement relating to the Pledged Collateral in which Creditor are not named as sole secured parties.

15.     *Debtor's Obligations.* The obligations of Debtor under this Agreement shall be absolute and unconditional in accordance with its terms and shall remain in full force and effect (except as otherwise provided under Section 18 of this Agreement) without regard to, and shall

not be released, suspended, discharged, terminated or otherwise affected by, any circumstance or occurrence whatsoever, including, without limitation:

15.1    Any change in the time, place or manner of payment of, or in any other term of, all or any of the Secured Obligations, any waiver, indulgence, renewal, extension, amendment or modification of or addition, consent or supplement to or deletion from or any other action or inaction under or in respect of this Agreement, the Note, or any other relevant agreement (as defined in the Note), or any of the other documents, instruments, or agreements relating to the Secured Obligations or any other instrument or agreement referred to therein or any assignment or transfer of any thereof;

15.2    Any lack of validity or enforceability of the Note, or any other relevant agreements (as defined in the Note), or any other documents, instruments or agreement referred to therein or any assignment or transfer of any thereof;

15.3    Any furnishing of any additional security or collateral to Creditor or its assignees or any acceptance thereof or any release of any security by Creditor or its assignees;

15.4    Any limitation on any party's liability or obligations under any such instrument or agreement or any invalidity or unenforceability, in whole or in part, of any such instrument or agreement or any term thereof;

15.5    Any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to Debtor, as applicable, or any action taken with respect to this Agreement by any trustee or receiver, or by any court, in any such proceeding, whether or not Debtor shall have notice or knowledge of any of the foregoing;

15.6    Any exchange, release or nonperfection of any other collateral, or any release, or amendment or waiver of or consent to departure from any guaranty or security, for all or any of the Secured Obligations; or

15.7    Any other circumstance which might otherwise constitute a defense available to, or a discharge of, Debtor.

16.    *Power of Attorney.*  Debtor absolutely and irrevocably constitutes and appoints Creditor as its true and lawful agent and attorney-in-fact with full power of substitution, in the name of Debtor upon the occurrence of an Event of Default (as defined in the Note):

16.1    To execute and do all such assurance, acts and things which Debtor ought to do but has failed to do under the covenants and provisions contained in this Agreement;

16.2    To take any and all such action as Creditor or any of its sub-agents, nominees or attorneys may, in its or their sole and absolute discretion, reasonably determine as necessary or advisable for the purpose of maintaining preserving or

protecting the security constituted by this Agreement or any of the rights, remedies, powers or privileges of Creditor under this Agreement; and

16.3   Generally, in the name of Debtor, exercise all or any of the powers, authorities, and discretions conferred on or reserved to Creditor by or pursuant to this Agreement, and (without prejudice to the generality of any of the foregoing) to deliver or otherwise perfect any deed, assurance, agreement, instrument or act as Creditor may deem proper in or for the purpose of exercising any of such powers, authorities or discretions.  Debtor ratifies and confirms, and agrees to ratify and confirm, whatever lawful acts Creditor or any of Creditor's sub-agents, nominees or attorneys shall do or purport to do in the exercise of the power of attorney granted to Creditor pursuant to this Section, which power of attorney, being coupled with an interest and given for security, is irrevocable.

17.   *Miscellaneous.*   Debtor agrees with Creditor that each of the obligations and liabilities of Debtor to Creditor under this Agreement may be enforced against Debtor without the necessity of joining any other person (as defined in the Note) as a party.  This Agreement shall create a continuing security interest in the Collateral and shall be binding upon the heirs and legal beneficiaries, an permitted successors and assigns, of Debtor, as applicable, and shall inure to the benefit of and be enforceable by Creditor and its successor and assigns; provided, however, Debtor may not assign any of its obligations or liabilities hereunder without the prior written consent of Creditor.  Unless otherwise defined herein, terms defined in the UCC as in effect as of the Effective Date are as defined in the UCC.  The headings and titles in this Agreement are for convenience of reference only and shall not limit or define the meaning hereof.  This Agreement may be executed in any number or counterparts, each of which shall be an original, but all of which taken together shall constitute one agreement.  If any provision of this Agreement shall prove to be invalid or unenforceable, such provision shall be deemed to be severable from the other provisions of this Agreement which remaining provisions shall remain binding on all parties hereto.  Debtor shall have no rights of subrogation as to any of the Pledged Collateral until full and complete performance and payment of the Secured Obligations.  A faxed signature hereto shall be deemed to be as legally binding as a signed original for all purposes.

18.   *Termination.*   This Agreement shall terminate after the Secured Obligations are indefeasibly paid and satisfied in full and the Note is terminated in accordance with its terms.  Upon the termination of this Agreement, Creditor, at the request of Debtor and at the cost and expense of the Debtor, will promptly execute and deliver to Debtor the proper instruments acknowledging the termination of this Agreement and will duly assign, transfer and deliver to Debtor or to whomsoever shall be lawfully entitled to receive the same (without recourse and without any representation or warranty of any kind) such of the Pledged Collateral as may be in the possession of Creditor and has not theretofore been sold or otherwise applied or released pursuant to this Agreement.

19.   *Limitation of Liability.*   No claim may be made by Debtor or any other person or entity against Creditor or its officers, managers, members, shareholders, directors, employees, affiliates, attorneys, representatives, or agents of any of them for any special, indirect, punitive, exemplary, or consequential damages in respect of any claim for breach of contract or any other theory of liability (other than gross negligence or willful misconduct) arising out of or related to

the transactions contemplated by this Agreement, or any act, omission or event occurring in connection therewith; and Debtor waives, releases and agrees not to sue upon any such claim for any such damages, whether or not accrued and whether or not known or suspected to exist in its favor.

20.    *Governing Law; Jurisdiction*.  This Agreement shall be governed by the laws of the State of Wisconsin, without regard to conflict of laws principles.

The parties, by their duly authorized agents, have executed this Agreement on the dates opposite their signatures below but effective as of the Effective Date.

Dated:  June 21, 2011

Spara, LLC

By:  George S. Hofmeister, Sole Member of its Board of Managers.

SHRR 1948710v2

# EXHIBIT C

Final Judgment against Spara LLC et. al.

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF GRAND TRAVERSE

BOSTON FINANCE GROUP, LLC. a Florida limited
liability company,

          Plaintiff,

v

POWER-TEC MANUFACTURING, LLC. a Michigan
limited liability company, U.S. TOOL &
ENGINEERING, LLC. a Delaware limited liability
company, REVSTONE INDUSTRIES, LLC. a
Delaware limited liability company, REVSTONE TOOL
& ENGINEERING, LLC. a Delaware limited liability
company, f/k/a Omega TG, LLC, POWER-TEC
MANUFACTURING, LLC. a Delaware limited liability
company, SALEEN, LLC, a Delaware limited liability
company, REVSTONE TRANSPORTATION, LLC, a
Delaware limited liability company, f/k/a Cerion, LLC,
CONTECH FORGINGS, LLC. a Delaware limited
liability company. and SPARA, LLC. a Delaware limited
liability company,

          Defendants.

CASE NO. 12-28975-CK

HON. PHILIP E. RODGERS, JR.

**FINAL JUDGMENT**

---

Craig S. Neckers (P24349)
Daniel M. Morley (P43310)
Andrew J. Blodgett (P68259)
SMITH HAUGHEY RICE & ROEGGE
*Attorneys for Plaintiff*
101 N. Park St., Ste. 100
Traverse City, MI 49684
(231) 929 4878

Andrew W. Mychalowych (P39602)
Lindsay James (P66778)
SICILIANO MYCHALOWYCH & VAN DUSEN,
PLC
Attorneys for Defendants
37000 Grand River Ave., Ste. 350
Farmington Hills, MI 48335
(248) 442-0510

Thomas R. Alward (P31724)
Nicole R. Graf (P55474)
BRANDT FISHER ALWARD & PEZZETTI, P.C.
Co-Counsel for Defendants
1241 E. Eight Street/P.O. Box 5817
Traverse City, MI 49686-5817
(231) 941-9660

---

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

## FINAL JUDGMENT

At a session of said Court held in the City of Traverse City,
in said County, on April 9, 2012.

PRESENT: HON. PHILIP E. RODGERS, JR., Circuit Court Judge

Having come before the Court on Plaintiffs' Motion for Summary Disposition, the Court having had the opportunity to review the briefs and hear oral argument on April 9, 2012, and being fully advised in the premises;

IT IS HEREBY ORDERED AS FOLLOWS:

IT IS HEREBY ORDERED that Counts 8, 9, and 10 of Plaintiff's complaint are DISMISSED with prejudice.

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Disposition is GRANTED as to all remaining counts in the complaint.

IT IS HEREBY ORDERED that a Judgment in favor of Plaintiffs against Defendants is entered in the following amounts:

$4,516,000.00 [US Tool Loan Amount], jointly and severally with and amongst Defendants US TOOL & ENGINEERING, LLC, REVSTONE TOOL & ENGINEERING, LLC, and REVSTONE INDUSTRIES, LLC.

$6,986,347.17 [Power Tec Loan Amount], jointly and severally with and amongst Defendants POWER TEC MANUFACTURING, LLC, a Michigan LLC, POWER TEC MANUFACTURING, LLC, a Delaware LLC, SALEEN, LLC, REVSTONE INDUSTRIES, LLC, and REVSTONE TRANSPORTATION, LLC.

$4,805,666.62 [Contech Forgings loan amount], jointly and severally with and amongst Defendants CONTECH FORGINGS, LLC, REVSTONE INDUSTRIES, LLC, and REVSTONE TOOL & ENGINEERING, LLC.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

$3,338,750.00 [Revstone loan amount], against REVSTONE INDUSTRIES, LLC.

$6,708,500.00 [Spara loan amount], jointly and severally with and amongst Defendants SPARA

LLC and REVSTONE INDUSTRIES, LLC.

$358,201.10 [60 day loan amount], jointly and severally with and amongst Defendants POWER

TEC MANUFACTURING, LLC, a Michigan LLC, POWER TEC MANUFACTURING,

LLC, a Delaware LLC, SALEEN, LLC, SPARA LLC, and REVSTONE INDUSTRIES,

LLC.

This Final Judgment resolves the last pending claim and closes the case.  Costs are awarded to Plaintiff as the prevailing party.

Dated:  April 9, 2012

_____
Hon. Philip E Rodgers, Jr.
Circuit Court Judge

4/09/12

I HEREBY CERTIFY this copy to be a
true and correct copy of the original
on file with the office of County Clerk.
LINDA COBURN
Grand Traverse County Clerk
By:_____
Deputy County Clerk
Date:  11/5/12