# Exhibit K

## SECURITY AGREEMENT

Effective Date: November 17, 2012

This Security Agreement (**Agreement**) is made by and between **Boston Finance Group, LLC**, a Florida limited liability company of 4912 Creekside Drive, Clearwater, Florida 33760 (together, with its successors and assigns, **Boston**), and **Lexington Logistics, LLC**, a Delaware limited liability company located at N7660 Industrial Road, Portage, Wisconsin 53901, f/k/a Spara Logistics, LLC (***Debtor***).

### -RECITALS-

A.  Pursuant to the terms of a Promissory Note dated November 17, 2012, Debtor has borrowed $750,000 from Boston.

B.  As inducement for Boston to make the loan, Debtor granted Boston a security interest in all of Debtor's business assets.

Therefore, Boston and Debtor agree as follows:

1.  ***Grant of Security Interest.*** Debtor grants to Boston a continuing security interest in all of its assets (collectively, ***Collateral***).

2.  ***Location of Collateral.*** As of the Effective Date, the Collateral is located at N7660 Industrial Road, Portage, Wisconsin 53901(***Location***). Debtor covenants with Boston not to remove the Collateral from the Location without the express, prior, written consent of Boston.

3.  ***No Transfer of Collateral.*** Debtor agrees not to sell, transfer, or convey the Collateral without the express, prior, written consent of Boston.

4.  ***Financing Statements.*** Debtor authorizes Boston to file one or more financing statements describing the Collateral, and Debtor ratifies any financing statements previously filed by Boston regarding the Collateral.

5.  ***Event of Default and Acceleration.*** Each of the following shall be an ***Event of Default*** under this Agreement:

    a.  If an event of default exists under the Promissory Note given to Boston by Debtor, or under any other instrument that at any time evidences any indebtedness, or under any other security agreement, loan agreement, mortgage, assignment, guaranty, or other agreement that now or in the future secures or relates to any indebtedness or obligation now or in the future owing by Debtor to Boston or that secures or relates to any guaranty of any such indebtedness or obligation (collectively, ***Security Documents***).

    b.  If any warranty, representation, or statement that has been or in the future is made to Boston by Debtor, or by any guarantor of all or part of the indebtedness in this Agreement or in any of the Security Documents, financial statement, or otherwise, shall have been false in any material respect when made or furnished.

   c.   If Debtor or any Guarantor dies, dissolves, becomes insolvent, or makes an assignment for the benefit of creditors.

   d.   If any guaranty that now or in the future secures payment or performance of all or any part of the indebtedness is terminated, revoked, or limited for any reason, without Boston's written consent or agreement.

   e.   If any attachment, garnishment, levy, execution, or other legal process is at any time issued against or placed upon any of the Collateral.

   f.   If at any time Boston believes that the prospect of payment or performance of any of the Indebtedness is impaired.

6.   *Boston's Rights and Remedies.* Boston shall have all rights and remedies under applicable laws. Without limiting those rights and remedies:

   a.   Upon the occurrence of an Event of Default, without notice or demand to Debtor, Boston shall have the right to take all actions that it considers necessary or desirable to collect upon the Collateral, including, without limitation, prosecuting actions against, or settling or compromising disputes and claims with, Debtor.

   b.   If all or any part of any indebtedness is not paid when due, then Debtor shall deliver, upon Boston's demand, the Collateral and proceeds of Collateral to Boston at the place that Boston designates, and Boston may dispose of the Collateral in any commercially reasonable manner. Any notification that Boston is required to give to Debtor regarding any sale or other disposition of Collateral shall be considered reasonable if it is mailed at least ten (10) days before the sale or other disposition. In connection with any disposition of Collateral, Boston may comply with the requirements of any applicable state or federal law or regulation, and such compliance shall not cause the disposition to not be commercially reasonable.

   c.   Boston shall apply the proceeds of any collection or disposition of Collateral first to expenses that Boston incurs in retaking, holding, preparing for disposition, processing, and disposing of the Collateral, and to Boston's reasonable attorney fees and expenses, as provided in this Agreement, and then to the indebtedness, and Debtor shall be liable for any deficiency remaining. Boston does not have any obligation to prepare or process any Collateral for sale or other disposition. If Boston sells any of the Collateral on credit, then Debtor will be credited only with payments that the purchaser actually makes and that Boston receives and applies to the unpaid balance of the purchase price of the Collateral. If the purchaser fails to pay for the Collateral, then Boston may again dispose of the Collateral and apply the proceeds in accordance with this paragraph.

   d.   All rights and remedies of Boston shall be cumulative and may be exercised from time to time.

7.   *Expenses.* Debtor shall reimburse Boston on demand for all attorney fees, legal expenses, and other expenses that Boston incurs in protecting and enforcing its rights under this

Agreement, including fees and expenses that Boston incurs in trying to take possession of Collateral from Debtor, a trustee or receiver in bankruptcy, or any other person. Boston may apply any proceeds of collection or disposition of Collateral to Boston's attorney fees, legal expenses, and other expenses.

8.     *Amendments and Waivers.* A provision of this Agreement may not be modified or waived except by a written agreement that Boston signs. Boston shall continue to have all of its rights under this Agreement even if it does not fully and promptly exercise them on all occasions. Debtor waives all defenses based on suretyship or impairment of Collateral. Without limiting the generality of the preceding sentence:

a.     Boston may, at its option, waive any Event of Default, defer an action on any Event of Default; extend or modify the time or manner of payment of the indebtedness or waive or modify any term or condition relating to the indebtedness; release Collateral or other security for the indebtedness; release any person liable for any of the indebtedness, including any borrower or Guarantor; or make advances or other extensions of credit secured by this Agreement;

b.     Boston's security interest in the Collateral and Debtor's obligations under this Agreement shall not be released or impaired if Boston fails to obtain, perfect, or secure priority of any other security for the indebtedness that anyone else agrees to give or gives; and

c.     Boston is not required to sue upon or otherwise enforce payment of the indebtedness or any other security before Boston exercises its rights under this Agreement.

9.     *Notices.* Any notice to Debtor or to Boston shall be considered to be given if and when mailed, with postage prepaid, to the respective address of Debtor or Boston that appears on the first page of this Agreement or if and when it is delivered personally.

10.     *Miscellaneous.* In this Agreement, the "maturity" of any of the indebtedness means the time when that indebtedness becomes due and payable, for whatever reason (including, for example, acceleration due to an Event of Default). The obligations of all persons signing this Agreement as Debtor are joint and several, and the term "Debtor" refers to each and all of them.

11.     *Binding Effect.* This Agreement shall be binding upon and inure to the benefit of Debtor and Boston, and their respective successors and permitted assigns.

12.     *Application of Payments.* To the extent that the security interest that this Agreement grants secures the unpaid purchase price of, or a loan or loans made by Boston to pay the purchase price of, some or all of the Collateral, Boston shall apply payments that it receives, first, to any indebtedness or obligations that Debtor owes and that are not secured by the security interest that this Agreement grants and, second, to any part of the indebtedness that is not a purchase-money obligation. Each payment that Boston applies to purchase-money obligations shall be applied in the order in which those obligations were incurred.

13. *Counterparts.* This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by fax or e-mail transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original for all purposes. Signatures of the parties transmitted by fax or e-mail shall be deemed to be their original signatures for all purposes.

14. *No Jury Trial.* BOSTON AND DEBTOR EACH IRREVOCABLY AND UNCONDITIONALLY WAIVE THEIR RIGHT TO A TRIAL BY JURY IN ANY ACTION, INCLUDING ANY CLAIM, COUNTER-CLAIM, CROSS-CLAIM OR THIRD-PARTY CLAIM (*CLAIM*), THAT IS BASED UPON, ARISES OUT OF OR RELATES TO THIS SECURITY AGREEMENT OR THE INDEBTEDNESS, INCLUDING, WITHOUT LIMITATION, ANY CLAIM THAT IS BASED UPON, ARISES OUT OF, OR RELATES TO ANY ACTION OR INACTION OF BOSTON IN CONNECTION WITH ANY ACCELERATION OF THE INDEBTEDNESS OR ANY ENFORCEMENT OF BOSTON'S SECURITY INTEREST IN THE COLLATERAL.

15. *Governing Law.* This Agreement shall be governed by, construed, and enforced in accordance with the laws of the state of Wisconsin, without regard to its or any other jurisdiction's conflict-of-law or choice-of-law rules or principles.

Debtor and Boston, by their duly authorized agents, have executed this Security Agreement on the dates opposite their signatures below but effective as of the Effective Date.

*[Signatures appear on the next page.]*

Dated: November _17_, 2012

**DEBTOR:**

**Lexington Logistics, LLC**, a Delaware limited
liability company (f/k/a Spara Logistics, LLC)

By: _____John Fernand_____
Its: Authorized Agent

**Accepted by:**

Dated: November 17, 2012

**BOSTON:**

**Boston Finance Group, LLC**, a Florida
limited liability company

By: _____Jonathan Golder_____
Its:  Authorized Agent